# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DAVID L. CUMMIN, M.D., et al.,**

    **Plaintiffs,**

v.

**LANNY NORTH, et al.,**

    **Defendants.**

Case No. 2:15-cv-1043
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

Longstanding disagreements between several of Hocking County's elected officials came to a head in the summer of 2014, resulting in Plaintiff David L. Cummin, M.D., being charged with five second-degree misdemeanors. Four of the five counts were dismissed prior to trial. And after the State's presentation of evidence, Cummin was acquitted on the last count under Ohio Rule of Criminal Procedure 29. This case followed. Currently before the Court is Plaintiffs' motion for partial summary judgment [ECF No. 191] and Defendants' motions to strike [ECF Nos. 166, 169], motions for summary judgment [ECF Nos. 140, 145, 187], and Motion for Leave to File Excess Pages [ECF No. 186]. For the following reasons, Defendants' Motion for Leave to File Excess Pages is **GRANTED**, Defendants' motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART** as moot, and Plaintiffs' motion for partial summary judgment [ECF No. 191] and Defendants' motions to strike [ECF Nos. 166, 169] are **DENIED** as moot.

### I.

**A.**    **Factual Background**

Plaintiff Cummin is the Coroner of Hocking County, Ohio. (Cummin Dep. 1 at 9 [ECF

No. 142].) He has served in the part-time, elected position since 1999. (*See id.* at 9–10, 17.) For most of Cummin's time as the coroner, he worked with two part-time investigators who were paid $4,150 per year and received public employee healthcare and retirement benefits. (*Id.* at 122.)

The eligibility requirements for participation in Ohio's Public Employees Retirement System changed in 2013. Following the eligibility change, only public employees paid at least $12,000 annually were able to obtain full retirement and healthcare benefits. (*See* Cummin Dep. 1 at 123–24.) Receiving healthcare and retirement benefits was one of the main reasons the investigators worked at the coroner's office. (*See id.* at 130.) The investigators' salary, however, was below the new eligibility threshold, and Cummin was unable to secure additional funding from the Hocking County Commissioners to increase their salary to at least $12,000 per year. (*See id.* at 135–36.) Consequently, both of Cummin's investigators resigned at the end of 2013, and, as of January 1, 2014, Cummin was left without any employees at the coroner's office. (*See id.*)[1]

Several weeks after the resignation of his investigators, Cummin left Hocking County to attend continuing education seminars in Dublin, Ohio. (Cummin Dep. 2 at 254–57 [ECF No. 143].) Cummin was out of the county from January 9 to 12 and from January 23 to 26. (*Id.*) Cummin again left Hocking County in July 2014. He went to Jamaica from July 3 to 6. (*Id.* at 262.) And he traveled to New York for his niece's wedding for eleven days around the end of the month. (*Id.* at 269–70.)

On July 19, while Cummin was in New York, a double shooting, homicide-suicide,

---

[1] Defendants do not agree that the investigators resigned; they argue that the investigators retired. (*See* Downs Mot. for Summ. J. at 3 [ECF No. 145].) Because the Court must view the evidence in the light most favorable to the nonmoving party when considering a motion for summary judgment, the Court assumes that the investigators resigned, as Cummin has argued. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

occurred in Hocking County. (Cummin Dep. 2 at 357–58.) The homicide victim's body was transported to the morgue so it could be autopsied. (*See* Cummin Dep. 1 at 210.) Having the autopsy completed posed a problem though. The Franklin County Coroner conducts autopsies for Hocking County and bills the county for the cost—approximately $1,100 per autopsy. (Cummin Dep. 1 at 202; Cummin Dep. 2 at 253.) By late July 2014, however, there was only $610.25 remaining in the coroner's lab and morgue account. (Cummin Dep. 1 at 197.)

Cummin spoke by phone with Commissioner John Walker that evening about what to do with the homicide victim's body. (*See* Cummin Dep. 2 at 358–59; Downs Narrative Suppl. at PageID 1880 [ECF No. 108-3].) By Cummin's account:

> I told him that we had a problem, that I only had—I didn't have enough money in my budget for an autopsy and that I had a homicide victim that was on scene. It occurred about 10:00 p.m. And that I didn't know what I was supposed to do since I couldn't send him legally for autopsy until I had moneys to prove that—in the account. I can't spend money that wasn't allocated to me. I did not refuse to transport the body. . . . I did not say I wasn't going to do an autopsy. . . . I didn't ask for any resolution. . . . I asked him for his help.

(Cummin Dep. 2 at 358–59.) According to Cummin, Walker responded by insisting that the necessary money would be placed in the coroner's account:

> He said he could assure me that there would be money put in there. And I said, John, you can only speak for one of the three commissioners. You cannot—I need at least two commissioners to tell me that because I'm not going to be charged with any more lawsuits. We're going to do things by the book and that's how it's going to be. I need some assurance that there will be money in there so that I don't get—so I'm not breaking the law.

(Cummin Dep. 1 at 203.)

Walker offered a slightly different account of the conversation. (Walker Statement at PageID 1881 [ECF No. 108-3].) According to Walker, Cummin called at around 10:30 p.m. on July 19 to inform him that the coroner's office did not have sufficient funds in its lab and morgue account to pay for an autopsy:

3

> I told him that the Commissioners would transfer funding to the Lab/Morgue at Tuesday's meeting. He said my word was not sufficient, that he wanted a Resolution e-mailed to him saying he could spend money out of a line item without having sufficient funds in that line item. Again I told him that it is standard protocol to put money in Lab/Morgue and transport line items whenever these funds are low. He again said my word was not sufficient and he wanted an e-mail saying he could do this.

(*Id.*)

Following his conversation with Cummin, Walker called Prosecutor Laina Fetherolf, who "authorized [him] to contact Clark [Sheets] and Sandy [Ogle] [the other commissioners] and do an emergency Resolution by phone." (Walker Statement at PageID 1881; *see* Walker Dep. at 44 [ECF No. 123].) Walker next called Commissioner Sheets. (Walker Dep. at 44–45.) Sheets indicated that he would agree to transfer the funds to the coroner's office. (*See id.* at 47.) After speaking with Sheets, Walker called Commissioner Ogle, who also indicated that she would agree to the transfer. (*See id.* at 47–48.) Following the conversations with Sheets and Ogle, Walker's wife drafted a memorialization of the commissioners' agreement. (*Id.* at 48.) Walker then called Ogle back and read the memorialization to her. (*See* Ogle Dep. at 47 [ECF No. 124]; Walker Dep. at 25.) The hand-written memorialization, dated 12:15 a.m., July 20, 2014, stated that the commissioners would transfer funds on Tuesday, July 22 to the coroner's lab and morgue account so that Cummin could immediately transport the body to Columbus. (Resolution at PageID 1882 [ECF No. 108-3].) The memorialization further states that the commissioners entered into the resolution by phone on the authorization of Prosecutor Fetherolf. (*Id.*) A typed version of the memorialization was later prepared and, on Tuesday, July 22, signed by the commissioners. (*See* Ogle Dep. at 50; Walker Dep. at 25–26, 44.)

On July 20, after receiving by email a copy of the hand-written memorialization representing that money would be transferred to the lab and morgue account, Cummin authorized

4

the body to be transported to Franklin County for an autopsy. (*See* Cummin Dep. 1 at 210; Ogle Dep. at 53.)

In July 2014, Hocking County Detective Edwin Downs began investigating Cummin's absences from the county. (*See* Downs Dep. at 43 [ECF No. 105].) Downs's supervisor, Chief Deputy David Valkinburg, had instructed Downs to gather reports (of death investigations in the county) and all of the relevant investigative materials and provide them to Fetherolf so she could make a decision on how to proceed. (*See* Valkinburg Dep. at 35–36 [ECF No. 117].) Before charging Cummin, Downs presented the charges to Fetherolf. (Downs Dep. at 58; *see* Valkinburg Dep. at 35.) She reviewed and approved them. (Fetherolf Dep. at 282 [ECF No. 127].) And as to Sheriff Lanny North's involvement, he has testified that he also authorized Downs to charge Cummin. (North Dep. at 217 [ECF No. 120].)

On July 23, 2014, Downs signed and filed with the Hocking County Municipal Court five criminal complaints, which collectively charged Cummin with three counts of dereliction of duty, in violation of O.R.C. § 2921.44(E), one count of obstructing official business, in violation of O.R.C. § 2921.31, and one count of coercion, in violation of O.R.C. § 2905.12(A)(5), all of which are second-degree misdemeanors. (*See* Crim. Compls. at PageID 1867–74 [ECF No. 108-1].) Cummin was not handcuffed, arrested, jailed, or taken into custody on the charges. (Cummin Dep. 2 at 345–46.) At his August 11, 2014 arraignment, Cummin pleaded not guilty and left court on a $1,500 personal recognizance bond. (Municipal Ct. Docket at PageID 3933 [ECF No. 159-1]; Recognizance of Accused at PageID 3935 [ECF No. 159-1].) As conditions of his release on bond, Cummin agreed to appear before the court and to maintain his current address. (*See* Recognizance of Accused at PageID 3935.)

Noting a potential conflict of interest, Fetherolf moved the municipal court for

5

appointment of a special assistant prosecuting attorney to assist in Cummin's prosecution. (Appl. to Appoint at PageID 1891–92 [ECF No. 108-4].) The court granted the request, and James Stanley, a prosecutor for the City of Athens, was appointed as a special prosecutor. (*See* Stanley Oath at PageID 1893 [ECF No. 108-5].)

Stanley reviewed the charges against Cummin and decided to only proceed with the coercion charge. (*See* Sept. 16, 2014 Stanley Email at PageID 1904 [ECF No. 108-11].) Stanley dismissed the others. (Mots. to Dismiss at PageID 1896–1903 [ECF No. 108-10].) The case proceeded to trial, and at the conclusion of the State's case, the trial judge dismissed the coercion charge pursuant to Ohio Criminal Rule 29. (Stanley Dep. at 46–47 [ECF No. 108].)

**B.  Procedural History**

Cummin, along with his wife and children, Plaintiffs Crystal Cummin, John Cummin, T.C., A.C., and N.C., brought this action on March 24, 2015. (Compl. at 1 [ECF No. 1].) Plaintiffs have since filed an Amended Complaint and substituted several official capacity Defendants. Plaintiffs are suing Defendants Lanny North (in his individual and official capacities), David Valkinburg (in his individual and official capacities), Edwin Downs (in his individual and official capacities), Laina Fetherolf (in her individual capacity), Benjamin E. Fickel (in his official capacity as the current Hocking County Prosecutor), the Hocking County Board of Commissioners, Sandy Ogle, Clark Sheets, and John Walker. (Am. Compl. ¶¶ 5–12 [ECF No. 164]; Order on Mot. to Substitute at 1–2 [ECF No. 193].)[2] Plaintiffs assert nine claims: (1) malicious prosecution under 42 U.S.C. § 1983; (2) malicious prosecution under Ohio law; (3)

---

[2] Plaintiffs have not clarified whether they are suing Ogle, Sheets, and Walker in their individual capacities, official capacities, or both. (*See* Am. Compl. at 4.) Walker and Sheets no longer serve on the Hocking County Board of Commissioners, (Pls.' Reply in Supp. of Mot. for Partial Summ. J. at 1 n.1 [ECF No. 203]), so presumably they are sued in only their individual capacities. The Court, however, need not resolve this uncertainty to decide the motions currently before it. Plaintiffs cannot point to evidence that makes out a constitutional violation; this defeats Plaintiffs' individual and official capacity claims under § 1983.

6

abuse of process; (4) intimidation of a public official; (5) violation of the Ohio Open Meetings Act; (6) loss of consortium; (7) declaratory judgment; (8) further relief pursuant to 28 U.S.C. § 2202; and (9) further equitable relief. (Am. Compl. ¶¶ 79–136.)[3]

Defendants have moved for summary judgment on all of Plaintiffs' claims. Plaintiffs, in turn, have filed a cross-motion for summary judgment on Count 5, the alleged violation of the Ohio Open Meetings Act. Defendants Valkinburg and Downs have moved to strike Lynn Grimshaw's expert report, which opines that Defendant Fetherolf violated various Ohio Rules of Professional Conduct and that no probable cause existed to file any charges against Cummin. (Grimshaw Report at 12–13 [ECF No. 159-1].) And Defendants North, Fetherolf, Fickel, and the Hocking County Board of Commissioners have moved for leave to file excess pages—a request that the Court hereby grants.[4]

The Court turns first to Defendants' motions for summary judgment, as the Court's holding on those motions obviates an extensive consideration of Plaintiffs' motion for partial summary judgment and Defendants' motions to strike.

## II.

**A.    Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to

---

[3] Plaintiffs do not expressly state in the Amended Complaint that the malicious prosecution claim in Count 2 is brought under Ohio law. (*See* Am. Compl. ¶¶ 89–96.) Given, however, that the malicious prosecution claim in Count 1 explicitly states that it is brought under § 1983, (*see id.* at 17), the Court assumes that Count 2 is brought under Ohio law.
[4] For the parties' edification, the undersigned does not have a current standing order imposing page limitations, and Local Civil Rule 7.2(a)(3) does not require a party to move for leave to file a motion in excess of twenty pages. *See* S.D. Ohio Civ. R. 7.2(a)(3).

7

support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). When the moving party has carried this burden, the nonmoving party must then set forth specific facts showing that there is a genuine issue for trial. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).

"After the parties have presented their evidence, 'the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Moldowan*, 578 F.3d at 374 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). However, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

**B.      Malicious Prosecution under § 1983**

Defendants request summary judgment on Plaintiffs' § 1983 malicious prosecution claim (Count 1). Section 1983 provides a remedy for "the deprivation of rights, privileges, or immunities secured by the Constitution and laws" with respect to actions taken by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. To prevail on a claim brought under § 1983, plaintiffs must prove (1) that they were

8

deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015).

1. **Individual Capacity Claim**

Defendants raise several arguments for why they are entitled to summary judgment in their individual capacities. Defendants' qualified immunity argument proves dispositive though, so the Court begins and ends its analysis there.

Under the doctrine of qualified immunity, "'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether qualified immunity shields a defendant from liability requires the Court to decide (1) whether the facts produced by the plaintiff make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of the alleged violation. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). A right is clearly established for qualified immunity purposes if "the contours of the right at issue have been made sufficiently clear to give a reasonable official fair warning that the conduct at issue was unconstitutional." *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015). The Court may address these two requirements in any order. *Gavitt*, 835 F.3d at 640. When a defendant raises qualified immunity as an affirmative defense, the plaintiff bears the burden of demonstrating that the official is not entitled to the defense. *Id.* at 641.

Here, Plaintiffs fail to satisfy the first requirement. They cannot point to evidence that makes out a constitutional violation.

To prevail on a § 1983 malicious prosecution claim, a plaintiff must prove that "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb*, 789 F.3d at 659 (citing *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).

Defendants contend, among other arguments, that Cummin has not suffered a deprivation of liberty. The Court agrees. Cummin was not handcuffed, arrested, jailed, or taken into custody. (Cummin Dep. 2 at 345–46 [ECF No. 143].) Cummin left court after his arraignment on a $1,500 personal recognizance bond that did not require him to actually pay any money. (*See id.* at 346; Recognizance of Accused at PageID 3935 [ECF No. 159-1].)[5] And as conditions of his release on bond, Cummin agreed to appear before the court and to maintain his current address. (Recognizance of Accused at PageID 3935.) These circumstances do not amount to a deprivation of liberty protected by the Fourth Amendment. *See Noonan v. Cnty. of Oakland*, 683 F. App'x 455, 462–63 (6th Cir. 2017) (holding that the plaintiff did not suffer a deprivation of liberty where he "was never arrested or incarcerated, required to post bail or bond, or subjected to any travel restrictions"); *Rapp v. Putman*, 644 F. App'x 621, 628 (6th Cir. 2016) (finding no deprivation of liberty where the plaintiff did not allege that he was seized or otherwise detained following the issuance of a citation and concluding that even if "being 'subject to the authority of the [court]'" is a Fourth Amendment seizure, such a right is not clearly established); *Billock v. Kuivila*, No. 4:11-cv-02394, 2013 WL 591988, at *6 (N.D. Ohio Feb. 14, 2013) ("Service with a

---

[5] "A recognizance bond is in the nature of a conditional confession of judgment, *i.e.,* by signing a recognizance bond, the defendant acknowledges that the monetary sum is already due, but that it is not subject to payment until the conditions of the recognizance are violated." *State v. Larsen*, No. 00CA17, 2001 WL 1913875, at *3 (Ohio Ct. App. May 31, 2001).

summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation."); *Hopkins v. Sellers*, 2011 WL 2173859, at *9–10 (E.D. Tenn. June 2, 2011) (finding no deprivation of liberty where the plaintiff was never arrested, jailed, detained, required to post bond, or placed under travel restrictions); *Briner v. City of Ontario*, No. 1:07CV129, 2011 WL 866464, at *4 (N.D. Ohio Mar. 9, 2011) (finding no deprivation of liberty where the plaintiff argued that his deprivation was his being subject to the authority of the district and appellate courts).

Plaintiffs cite various cases for their argument that Cummin's release on a personal recognizance bond pending trial, with the condition of maintaining his current address, represents a deprivation of liberty. (*E.g.,* Pls.' Mem. in Opp'n to Downs's Mot. for Summ. J. at 18–20 [ECF No. 161].) None of these cases is on point.

Plaintiffs, for example, cite a concurring opinion in *Albright v. Oliver*, 510 U.S. 266, 279 (1994), in which Justice Ginsburg stated that a defendant is still "seized" in the constitutional sense when released from pretrial confinement because of the conditions of his or her release. However, neither the Supreme Court nor the Sixth Circuit has adopted Justice Ginsburg's approach (known as the "continuing seizure" doctrine). *Rapp*, 644 F. App'x at 628. And when the Sixth Circuit and the district courts in this circuit have found that the conditions of pretrial release constitute a deprivation of liberty, the conditions have been much more restrictive than those imposed on Cummin. *See, e.g.*, *Miller v. Maddox*, 866 F.3d 386, 393 (6th Cir. 2017) (The plaintiff was detained for forty-five minutes and paid a $35 fee to be released and accepted in a pretrial release program, which mandated that she show up for all court appearances and call the pretrial case manager every week until the case was resolved.). In a 2016 decision from this Court, for instance, which Plaintiffs discuss extensively as an example of the Court applying the

continuing seizure doctrine, the Court held that the plaintiff's conditions of release qualified as a deprivation of liberty because, as conditions of his release on a $30,000 bond, the plaintiff was placed under curfew, subjected to random drug testing at any time, subjected to required drug testing before hearings, prohibited from changing his address without permission from the court, required to report all narcotic and opiate prescriptions to probation before filling the prescriptions, prohibited from entering any forest owned or operated by the State of Ohio, and prohibited from leaving Ohio without permission of the court. *Bray v. Ohio Dep't of Natural Res.*, No. 2:14-cv-255, 2015 WL 1247012, at *4–5 (S.D. Ohio Mar. 18, 2015). Cummin, by contrast, was simply required to appear before the court and maintain his current address. (Recognizance of Accused at PageID 3935.)

Plaintiffs also cite *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015). (*E.g.*, Pls.' Mem. in Opp'n to Downs's Mot. for Summ. J. at 18.) *Johnson*, however, does not support Plaintiffs' position. In *Johnson*, the Sixth Circuit concluded that the defendant officers should have been granted summary judgment given the plaintiff's failure to sufficiently allege that the officers "influenced or participated" in the decision to continue the prosecution. *See Johnson*, 790 F.3d at 654–57. The court assumed, without deciding, that the conditions of the plaintiff's release on bond represented a deprivation of liberty. *Id.* at 654. The court did not offer any further discussion of the plaintiff's bond or conditions of release. *See id.*

And Plaintiffs cite a recent decision on a motion to dismiss from this Court in which the Court briefly discussed the continuing seizure doctrine. *Thornton v. City of Columbus*, 171 F. Supp. 3d 702, 710 (S.D. Ohio 2016). In *Thornton*, the Court dismissed the plaintiffs' malicious prosecution claim because it was improperly brought under the Fifth and Fourteenth Amendments to the Constitution. *Id.* at 710–11. Before addressing the improper constitutional

bases of the claim, the Court noted that a deprivation of liberty "need not be imprisonment, and the law deems a person 'continued to be seized for Fourth Amendment purposes when their freedom of action [is] restrained due to the pending criminal proceedings (e.g., restrictions on travel, and requirements to appear).'" *Id.* at 710 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 748 (6th Cir. 2006)). Cummin relies on this statement to suggest that he suffered a deprivation of liberty. The facts in *Thornton* are very different from those in the present case though. Cummin was not subjected to travel restrictions. He simply agreed to maintain his current address. (Recognizance of Accused at PageID 3935.) And critically, the allegations in *Thornton* involved significant periods of detention apart from the initial seizure. Guilford Thornton alleged that he was shot, placed under arrest, and then transported to the hospital. *Thornton*, 171 F. Supp. 3d at 703. Thornton was allegedly handcuffed to the bed throughout his stay at the hospital. *Id.* Then, after his release from the hospital, Thornton was allegedly transported to the police headquarters, placed in an interview room, and interrogated while he was still connected to an IV and clothed in a hospital gown. *Id.* at 703–04. Cummin, by contrast, has admitted that he was not handcuffed, arrested, or taken into custody in connection with the charges brought against him. (Cummin Dep. 2 at 345–46.)

Because Plaintiffs have not produced evidence showing that Cummin suffered a deprivation of liberty protected by the Fourth Amendment, Plaintiffs are unable to make out a violation of their constitutional rights. Accordingly, qualified immunity entitles Defendants to summary judgment in their individual capacities on the § 1983 malicious prosecution claim.

Given this holding, the Court has no reason to address whether Defendants had probable cause to charge Cummin. And because Defendants Valkinburg and Downs have challenged Lynn Grimshaw's expert report based on the report's conclusion that no probable cause existed

13

to charge Cummin, the Court denies as moot those Defendants' motions to strike.

### 2. Official Capacity Claim

"An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000). Consequently, Plaintiffs' official capacity malicious prosecution claim against Defendants North, Valkinburg, Downs, and Fickel—and potentially Defendants Ogle, Sheets, and Walker—is actually a claim brought against those Defendants' public employers.

A municipality may be held liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's "official policy," such that the municipality's promulgation or adoption of the policy can be said to have caused one of its employees to violate the plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014). A municipality cannot be held liable, however, if there is no underlying constitutional violation. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). And because Plaintiffs cannot establish an underlying constitutional violation, Plaintiffs' official capacity claim fails.[6]

### C. Declaratory Judgment and Further Relief

Defendants also seek summary judgment on Plaintiffs' declaratory judgment claim (Count 7) and claim for further relief pursuant to 28 U.S.C. § 2202 (Count 8).

Aside from one limited portion of the declaratory judgment claim, Plaintiffs do not

---

[6] The Court need not address Prosecutor Fickel's Eleventh Amendment defense, (*see* North, et al. Mot. for Summ. J. at 28–30 [ECF No. 187]), given the Court's conclusion that Plaintiffs cannot establish an underlying constitutional violation. *See Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006) (stating that a federal court may address the merits of a case first where the merits offer a more straightforward way of resolving the case and where the defendant has raised sovereign immunity as an alternative, or non-threshold, defense).

clarify whether they seek declaratory judgment under federal law or state law. In their Amended Complaint, Plaintiffs state that "[t]he averments of Count One of this Complaint [the § 1983 malicious prosecution claim] constitute a claim for declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 [of the] Federal Rules of Civil Procedure." (Am. Compl. ¶ 118 [ECF No. 164].) Plaintiffs follow that statement with a lengthy description of Fetherolf's alleged behavior toward Cummin dating back to 2012. (*See id.* ¶¶ 119–125, 128.) Plaintiffs then indicate that they are praying for an array of declarations ranging, for example, from a decree that "the Defendants have neither the duty . . . nor the legal authority to control the 'behavior' of the Plaintiff in conducting his official duties" to a declaration that the filing of the criminal case against Cummin "constitutes a malicious prosecution," to a finding that several of the Defendants, in carrying out the allegations set forth in the Amended Complaint, "obstruct[ed] or delay[ed] the performance by a public official of an authorized action within the public official's capacity . . . in violation of Ohio Revised Code § 2921.31." (Am. Compl. ¶¶ 130.1, 130.8, 130.14.) Only one of these additional declaration requests references federal law: the proposed finding that the criminal charges against Cummin violated his "Federal and Ohio Constitutional rights, and for this reason give rise to a cause of action pursuant to 42 U.S.C. § 1983." (*Id.* ¶ 130.21.)

Defendants are entitled to summary judgment on Plaintiffs' requested declarations relating to the § 1983 malicious prosecution claim. As explained above, Plaintiffs' § 1983 claim fails because Plaintiffs have not produced evidence that makes out a constitutional violation. Defendants are also entitled to summary judgment on Plaintiffs' remaining requests under the declaratory judgment claim—irrespective of whether the requests are brought under state or federal law.

Under the Declaratory Judgment Act a court may, in "a case of actual controversy within

15

its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). The phrase "case of actual controversy" in the Act refers to the type of cases and controversies that are justiciable under Article III of the Constitution. *MedImmune, Inc.*, 549 U.S. at 126–27. A declaratory judgment action will only satisfy the case or controversy requirement if the dispute (i) is "definite and concrete," meaning that it touches on the legal relations of parties having adverse legal interests; (ii) is "real and substantial"; and (iii) admits of specific relief "through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127 (internal quotation marks omitted). As the Supreme Court has explained, the question in a declaratory judgment action "'is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Under Ohio law, "[a] declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations." *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St. 3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 8. Ohio's declaratory judgment statutes are broad in scope but not without limitation. *Id.* ¶ 9. "Most significantly, in keeping with the long-standing tradition that a court does not render advisory opinions, they allow the filing of a declaratory judgment only to decide 'an actual controversy, the resolution of which will confer certain rights or status upon the litigants.'" *Id.* (quoting *Corron v. Corron* 531 N.E.2d 708, 712 (Ohio 1988)). Not every controversy is an actual one. For a justiciable question to exist, "'[t]he danger or dilemma of the plaintiff must be present, not contingent on the

happening of hypothetical future events . . . and the threat to his position must be actual and genuine and not merely possible or remote.'" *Id.* (quoting *League for Pres. of Civil Rights & Internal Tranquility, Inc. v. Cincinnati*, 28 N.E.2d 660, 661 (Ohio Ct. App. 1940)) (internal quotation marks omitted).

Defendants have convincingly argued that Plaintiffs' requests for declaratory judgment will not address any present or future threatened harm and are entirely based on addressing alleged past wrongs against Plaintiffs. (*See, e.g.*, Valkinburg Mot. for Summ. J. at 27–30 [ECF No. 140].) In response, Plaintiffs offer the conclusory assertion that their requested declarations "arise out of the same operative facts as the substantive causes of action" and are "intertwined among the causes of relief." (*E.g.*, Pls.' Mem. in Opp'n to Valkinburg Mot. for Summ. J. at 25 [ECF No. 159].) Plaintiffs do not point to any evidence in support of this assertion or offer any further analysis of how the intertwined nature of their claims and requests for declaratory relief meets the legal standard (under federal or state law) for obtaining a declaratory judgment. (*See, e.g., id.*)

Defendants are, accordingly, entitled to summary judgment on Plaintiffs' remaining requests for declaratory judgment. *See Moldowan*, 578 F.3d at 374 (After the party moving for summary judgment has carried its burden, "the nonmoving party must then set forth specific facts showing that there is a genuine issue for trial."). And because Plaintiffs' claim for declaratory judgment falls flat, their claim for further relief pursuant to § 2202 also fails. *See* 28 U.S.C. § 2202 (providing for "[f]urther necessary or proper relief based on a declaratory judgment or decree").

**D.     Remaining State Law Claims**

The Court's grant of summary judgment on the § 1983, declaratory judgment, and further

relief claims (Counts 1, 7, and 8) leaves before the Court only Plaintiffs' state law claims for malicious prosecution (Count 2), abuse of process (Count 3), intimidation of a public official (Count 4), violation of the Ohio Open Meetings Act (Count 5), loss of consortium (Count 6), and further equitable relief (Count 9). Where, as here, a district court has dismissed all of the claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction over a claim is purely discretionary and depends on judicial economy, convenience, fairness, and comity. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). As a rule of thumb though, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc.*, 89 F.3d at 1254–55.

After analyzing the relevant considerations, the Court concludes that it will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. The case has not proceeded to trial yet. Moreover, this case implicates significant questions of state law, including the scope of prosecutorial immunity in Ohio, whether filing criminal charges arguably unsupported by probable cause is intimidation of a public official, and whether late-night telephone conversations between county commissioners can constitute a meeting under the Ohio Open Meetings Act. These issues are best resolved by an Ohio court. And although Plaintiffs' state law malicious prosecution claim has similar elements to their § 1983 malicious prosecution claim, the Court has not had reason to delve into those common elements. As explained above, the Court is granting summary judgment on the § 1983 claim due to Cummin's inability to show that he suffered a deprivation of liberty under the Fourth Amendment—an element unique to the

federal claim.

Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, the parties' motions for summary judgment on those claims are denied as moot.

### III.

For these reasons, Defendants' Motion for Leave to File Excess Pages [ECF No. 186] is **GRANTED**, Defendants' motions for summary judgment [ECF Nos. 140, 145, 187] are **GRANTED IN PART** and **DENIED IN PART** as moot, and Plaintiffs' motion for partial summary judgment [ECF No. 191] and Defendants' motions to strike [ECF Nos. 166, 169] are **DENIED** as moot. Plaintiffs' remaining state law claims are **DISMISSED** without prejudice, and the Clerk is **DIRECTED** to enter judgment in this action.

**IT IS SO ORDERED.**

9-29-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**